# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

TWL Realty, LLC and Keystone : <br>
Correctional Services, Inc. : <br>
                   : <br>
          v. : <br>
                   : <br>
West Hanover Township Zoning : <br>
Hearing Board : <br>
                   : <br>
          v. : No. 17 C.D. 2015 <br>
                   : Argued: September 14, 2015 <br>
Board of Supervisors of West : <br>
Hanover Township : <br>
                   : <br>
Appeal of: West Hanover Township : <br>

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge <br>
                     HONORABLE MARY HANNAH LEAVITT, Judge <br>
                     HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY** <br>
**JUDGE LEADBETTER**                               **FILED: January 5, 2016**

        The Board of Supervisors (Board) of West Hanover Township appeals from the order of the Court of Common Pleas of Dauphin County, which reversed the decision of the West Hanover Township Zoning Hearing Board (ZHB) upholding the validity of Sections 195-10 and 195-103.T(8) of the Township's zoning ordinance (Ordinance). We affirm.

        Appellee, TWL Realty, LLC, is the owner of a 3.8-acre parcel of land located at 7201 Allentown Boulevard in West Hanover Township (Township). The property is located in a Commercial Highway (CH) zoning district. The

property contains a 44,000 square foot building in which Appellee, Keystone Correctional Services, Inc., operates a privately owned community work-release facility under a contract with the Commonwealth's Department of Corrections (Department). Keystone has operated at this location since September 2008 under two contracts with the Department. Under the first contract, which ran from September 2008 until July 1, 2013, Keystone had the option to reject offenders referred to them by the Department. Under the second contract, which runs from July 1, 2013 until June 30, 2016, Keystone is required to accept all offenders referred to it by the Department, regardless of criminal history. Under the first contract, Keystone accepted both parolee referrals from the Parole Board and pre-release offenders who were within a certain number of months from their minimum sentencing dates. Reproduced Record (R.R.) at 130a-31a; Notes of Testimony at 19-20. Under the second contract, Keystone accepts only parolee referrals from the Parole Board. *Id.*

Sections 195-10 and 195-103.T(8) of the Ordinance address the operation of community work-release facilities within the Township. "Work-release facility" is defined as:

> A facility providing housing and supervision for nonviolent criminals who are within six months of completion of their term or release and who have the opportunity to work, go to school, or take job training.

Section 195-10 of the Ordinance. R.R. at 230a. Section 195-103.T of the Ordinance provides for the operation of work-release facilities in the CH zoning district and limits the number of residents to 150. Further, Section 195-103.T(8) specifies that "[o]nly nonviolent crime detainee residents shall be permitted to

2

reside in the premises." The Ordinance does not define "nonviolent criminals" or "nonviolent crime detainee."[1]

The Township zoning administrator issued to Keystone a notice of violation dated August 26, 2013, based upon the residency of two residents, who were convicted of Tier #3 sexual offenses and were listed on the Megan's Law Registry. The zoning administrator stated that because the offenders had committed Tier #3 sex offenses, the Township considered them to be violent offenders and their residence at Keystone's facility violated Sections 195-10 and 195-103.T(8) of the Ordinance. Subsequently, the Department removed the offenders from Keystone's facility.

Keystone filed an appeal from the notice of violation challenging the zoning administrator's interpretation of Sections 195-10 and 195-103.T(8) or, in the alternative, challenging the substantive validity of the sections. After holding hearings on the appeal, the ZHB denied Keystone's appeal. The ZHB concluded that the zoning administrator interpreted "violent criminal" as a person who committed a "crime of violence." ZHB's December 4, 2013 Opinion at 6; R.R. 11a. The ZHB further concluded that the zoning administrator's interpretation of "nonviolent criminal" is consistent with Section 195-103.T(8)'s "nonviolent detainee," which focuses on the objective nature of the crime and not subjective speculation as to whether an offender poses a risk to the public safety at the time of parole. *Id.* The ZHB concluded that the zoning administrator's interpretation of Sections 195-10 and 195-103.T(8) were correct. *Id.* at 7; R.R. 12a. The ZHB rejected Keystone's reliance upon *Fross v. County of Allegheny*, 20 A.3d 1193 (Pa.

---

[1] Keystone entered the second contract knowing that Sections 195-10 and 195-103.T(8) limited residency to "nonviolent criminals" or "nonviolent crime detainee."

2011), and held that the Ordinance sections were not in conflict with the Prisons and Parole Code, 61 Pa. C.S. §§ 101-6309, or the Sentencing Code, 42 Pa. C.S. §§ 9701 - 9799.9, and therefore, not subject to conflict preemption. *Id*. at 7-8; R.R. 12a-13a. Relying upon *Commonwealth v. Ogontz Area Neighbors Association*, 483 A.2d 448 (Pa. 1984), the ZHB stated that Commonwealth agencies, including the Department, are required to comply with local zoning ordinances. *Id*. at 8; R.R. 13a. The ZHB determined that the Ordinance lacked an exclusionary impact because it permits, rather than excludes, work-release facilities and permits violent criminals to reside in detention centers within the Township. *Id*. at 9; R.R. 14a. Finally the ZHB concluded that the prohibition against violent criminals residing in work-release facilities is analogous to a limitation on the number of residents permitted under Section 195-103.T(4), which the Commonwealth Court in *TWL Realty, LLC v. Board of Supervisors of West Hanover Township* (Pa. Cmwlth., No. 325 C.D. 2012, filed Nov. 28, 2012) held to be a valid exercise of zoning powers.

Keystone appealed to the court of common pleas, which reversed the decision of the ZHB, concluding that the Ordinance sections were preempted by the Parole and the Sentencing Codes. Common pleas relied upon *Fross*, in which our Supreme Court considered whether an Allegheny County ordinance, which imposed stringent residency restrictions on sex offenders in the county, was preempted by the Parole Code and Megan's Law. Ultimately, the Supreme Court held that the county's ordinance interfered with both statewide statutory schemes, and, therefore, was preempted under the doctrine of conflict preemption. In the present case, therefore, common pleas concluded that Sections 195-10 and 195-103.T(B) obstructed the "full purposes and objectives" of Pennsylvania state law, specifically the Sentencing Code and Parole Code. Common Pleas' Opinion at 5;

4

R.R. 185a. Common pleas rejected the ZHB's conclusion that community safety required the ordinances because work-release facilities have "substantially less security" than other facilities, such as detention centers. *Id.* Common pleas stated that the Parole Code provides that the Parole Board may approve an eligible offender for parole if there is no reasonable indication of the offender posing a risk to public safety and if the offender's reentry plan is "adequate." *Id.* at 5-6; R.R. 185a-86a (citing 61 Pa. C.S. § 6137(g)(4) and *Fross*, 20 A.3d at 1197).

Moreover, common pleas noted that the Parole Board is charged with balancing public safety with rehabilitation of offenders and that Sections 195-10 and 195-103.T(8) of the Ordinance are incongruous with the Parole Board's authority. *Id.* at 6; R.R. 186a. Common pleas concluded that

> The ordinances restrict the Parole Board's ability to refer parolees to the facility, even after the Board has determined that the offender's reentry plan is adequate and that there is no reasonable indication that the offender poses a risk to public safety. This restriction interferes with the statewide statutory scheme developed to achieve the legislature's policy goal of a balance between public safety and rehabilitation. As such, state law preempts the sections at issue and invalidates them.

*Id.* Common pleas rejected Appellees' argument that the Ordinance sections are not preempted by state law because other facilities are available in which violent offenders may be placed, such as detention centers. Common pleas held that work-release facilities are unique from other facilities that house offenders because such facilities provide offenders with the opportunity to work in, contribute to, and reintegrate to the community. *Id.* at 6-7; R.R. 186a-87a. Common pleas concluded that when the Parole Board or a sentencing court has determined that a

5

specific work-release facility is an appropriate residence for an offender, in accordance with state law and the offender's reentry plan, local zoning ordinances may not contravene that determination. *Id*. at 7; R.R. 187a. This appeal followed.

The Board argues that its decision is supported by substantial evidence and its interpretation of the Ordinance must not be disturbed. The Board contends that it properly relied upon Section 9714(g) of the Sentencing Code, 42 Pa. C.S. § 9714(g),[2] which enumerates the crimes defined as "crimes of violence"

---

[2] Section 9714(g) provides:

> As used in this section, the term "crime of violence" means murder of the third degree, voluntary manslaughter, manslaughter of a law enforcement officer as defined in 18 Pa.C.S. § 2507(c) or (d) (relating to criminal homicide of law enforcement officer), murder of the third degree involving an unborn child as defined in 18 Pa.C.S. § 2604(c) (relating to murder of unborn child), aggravated assault of an unborn child as defined in 18 Pa.C.S. § 2606 (relating to aggravated assault of unborn child), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), assault of law enforcement officer as defined in 18 Pa.C.S. § 2702.1 (relating to assault of law enforcement officer), use of weapons of mass destruction as defined in 18 Pa.C.S. § 2716(b) (relating to weapons of mass destruction), terrorism as defined in 18 Pa.C.S. § 2717(b)(2) (relating to terrorism), trafficking of persons when the offense is graded as a felony of the first degree as provided in 18 Pa.C.S. § 3002 (relating to trafficking of persons), rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson endangering persons or aggravated arson as defined in 18 Pa.C.S. § 3301(a) or (a.1) (relating to arson and related offenses), ecoterrorism as classified in 18 Pa.C.S. § 3311(b)(3) (relating to ecoterrorism), kidnapping, burglary as defined in 18 Pa.C.S. § 3502(a)(1) (relating to burglary), robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, drug delivery resulting in death as defined in 18 Pa.C.S. § 2506(a) (relating to drug delivery resulting in death), or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or an

**(Footnote continued on next page…)**

to determine which offenders qualify as "nonviolent criminals" or "nonviolent crime detainees" under the Ordinance. By relying upon Section 9714(g), the Board argues that it used an objective standard to classify offenders and thus acted in a non-arbitrary and reasonable fashion.

The Board also asserts that the Ordinance is not preempted by state law. The Board states that unlike *Fross*, there is no evidence of record demonstrating that the full purposes and objectives of the Sentencing and Parole Codes are being obstructed by the Ordinance. The Board argues that there was no testimony that a class of individuals would be deprived of housing, or that the Parole Board would in any way be prevented from placing offenders at separate facilities properly zoned to house violent offenders. The Board notes that Keystone was able to return to the Department's custody the two offenders that prompted the notice of violation and thus, there was no evidence that the Ordinance barred a single reentry plan approved by the Parole Board. The Board also argues that the Ordinance supports the goals of the Parole Board because violent offenders serving the remainder of their sentences are not completely excluded from the Township since they may be housed in detention centers. The Ordinance controls in which facility violent offenders may be housed given the Township's legitimate public health, safety, moral and general welfare concerns. Finally, the Board asserts that common pleas erred by failing to give any deference to the Township or the ZHB as required by *Ogontz*.

---

(continued…)

      equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa. C.S. § 9714.

Turning first to the preemption argument, there are three forms of preemption in Pennsylvania, express preemption, field preemption, and conflict preemption. *Holt's Cigar Co. v. City of Phila.*, 10 A.3d 902 (Pa. 2011). Under conflict preemption, any local ordinance that contradicts, contravenes, or is inconsistent with a state statute is invalid. *Id.* For conflict preemption to be applicable, the conflict between the statute and the ordinance must be irreconcilable. *Id.*; *City Council of the City of Bethlehem v. Marcincin*, 515 A.2d 1320, 1326 (Pa. 1986). Further, the local ordinance in question must be considered in light of the objectives of the General Assembly and the purposes of the relevant statute, and the local ordinance may not stand as an obstacle to the execution of those objectives and purposes. *Holt's Cigar Co.*; *Huntley & Huntley, Inc. v. Borough Council of the Borough of Oakmont*, 964 A.2d 855, 862-63 (Pa. 2009). However, a municipality "may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable." *Holt's Cigar Co.*, 10 A.3d at 907 [citing *Mars Emergency Med. Servs., Inc. v. Twp. of Adams*, 740 A.2d 193, 195 (Pa. 1999)].

In *Fross*, Allegheny County amended its county code to add a new chapter entitled "Residence Requirements; Registered Sex Offenders," which prohibited offenders listed on the Megan's Law registry from living within 2500 feet of a child care facility, community center, public park or recreational facility or school. In practice, sex offenders would have been prohibited from living in the vast majority of the habitable and developed areas of Allegheny County. The validity of the ordinance was challenged by various sex offenders who argued that the ordinance was invalid under the doctrine of conflict preemption.

8

The Supreme Court held that the General Assembly in Section 9721(b) of the Sentencing Code, 42 Pa. C.S. § 9721(b),[3] expressly listed among its purposes for adopting the Sentencing and Parole Codes the rehabilitation, reintegration, and diversion from prison of appropriate offenders. 20 A.3d at 1203. Further, in Section 6137(a)(1) of the Parole Code, 61 Pa. C.S. § 6137(a)(1),[4] the General Assembly made a determination that sex offenders, as a class, are eligible for parole and may benefit from these Commonwealth policies and that the best method for offering parole is to provide released offenders with familiar and stable environments that promote family and community ties, and provide access to employment, counseling and supervision. *Id*. at 1204. The Supreme Court concluded that the ordinance failed to acknowledge and effectively subverted the goals of the General Assembly.

---

[3] Section 9721(b) of the Sentencing Code provides, in relevant part:
> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa. C.S. § 9721(b).

[4] Section 6137(a)(1) of the Parole Code provides:
> (1) The [Parole Board] may parole subject to consideration of guidelines established under 42 Pa. C.S. § 2154.5 (relating to adoption of guidelines for parole) and may release on parole any inmate to whom the power to parole is granted to the [Parole Board] by this chapter…:
> > (i) The best interests of the inmate justify or require that the inmate be paroled.
> > (ii) It does not appear that the interests of the Commonwealth will be injured by the inmate's parole.

61 Pa. C.S. § 6137(a)(1).

Additionally, the Supreme Court determined that the ordinance failed to take into account the General Assembly's policy determination to facilitate the diversion of offenders from prison and the Commonwealth's interest in the timely and effective administration of probation and parole as expressed in Section 9791(a)(5) of the Sentencing Code, 42 Pa. C.S. § 9791(a)(5), and Section 6102(1) and (3) of the Parole Code, 61 Pa. C.S. § 6102(1) and (3).[5] The Supreme Court concluded that the added level of difficulty in devising adequate plans for release in Allegheny County could result in either probation or parole being granted under conditions less likely to maximize rehabilitation and reintegration potential, additional, and significant delays in processing the release of eligible offenders, or a greater number of otherwise eligible offenders simply being denied parole. *Id.* at 1205. Sentencing courts and the Parole Board are required to assess individual offenders regarding their suitability for probation or parole, and impose conditions tailored to the offender. *Id.* at 1206. The ordinance's 2500-foot prohibition would

---

[5] Section 6102(1) and (3) of the Parole Code provide, in relevant part:
> The parole system shall operate consistently with the following provisions:
> (1)  The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
> ***
> (3)  …the [Parole Board] and any other paroling entity shall address input by crime victims, assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders, shall consider any applicable guidelines established by the commission and shall ensure that parole proceedings, release and recommitment are administered in an efficient and timely manner.

61 Pa. C.S. § 6102(1) and (3).

obstruct the operation of the statewide statutory scheme by requiring courts and the Parole Board to abandon the tailored and proportionate approach of the General Assembly and attempt to devise new approaches that would satisfy the Allegheny County's wider-reaching restrictions. *Id.* The Supreme Court opined that to allow the ordinance to stay in effect would, in essence, allow the Allegheny County to "opt-out" of the statewide plan. *Id.*

Finally, the Supreme Court rejected Allegheny County's reliance upon *Ogontz*. 20 A.3d at 1207 n.13. In *Ogontz*, the Supreme Court held that a Commonwealth agency was permitted to acquire property, but the agency's use of the property as a mental health facility was subject to the municipality's zoning ordinance because the contest was between two equal instrumentalities of the state, the agency and a home rule municipality. *Id.* (citing *Ogontz*, 483 A.2d at 455). In *Fross*, the Supreme Court concluded that the direct conflict was between acts of the General Assembly and a county ordinance, between which, the statewide enactments prevail. *Id.* The Supreme Court concluded that the ordinance was in conflict with the Parole and Sentencing and Codes and, therefore was preempted. *Id.* at 1207.

In *TWL Realty*, this Court upheld the validity of Section 195-103.(T)(4) of the Ordinance which limited the number of offenders who could be housed at Keystone's facility to 150. The Department had approved the facility to house up to 250 residents based on the standards established by the American Correctional Association (ACA). Keystone argued that Section 195-103.(T)(4) was invalid because local regulation of work-release facilities was preempted by the Sentencing and Parole Codes because the Section 195-103.(T)(4) interfered with the goals of rehabilitation, reintegration, and diversion of appropriate

11

offenders. This Court held that the Ordinance would have been invalid if it entirely excluded work-release facilities or limited the number of work-release facilities in the Township or a particular zoning district. *TWL Realty* (Pa. Cmwlth., No. 325 C.D. 2015, filed Nov. 28, 2012), slip op. at 7-8. However, because the ordinance expressly permitted such facilities in a CH zoning district, restriction on occupancy to 150 residents was a permissible density regulation. *Id.* Further, relying upon *Ogontz*, the Court stated that neither Pennsylvania statutes nor ACA standards address the specific use of work-release facilities, such as the number of offenders, or otherwise prevent municipal involvement relating to where such facilities may be located. *TWL Realty* (No. 325 C.D. 2015, filed Nov. 28, 2012), slip op. at 7-8.

The *TWL Realty* Court rejected Keystone's reliance upon *Fross* because Section 195-103.(T)(4) did not have a similarly preclusive or exclusionary effect as the Allegheny County ordinance. *TWL Realty* (Pa. Cmwlth., No. 325 C.D. 2015), slip op. at 9. The Court held that because Section 195-103.(T)(4) permits work-release facilities in the Township, it advances the Commonwealth's goals of rehabilitation, reintegration, and diversion of appropriate offenders and did not effectively preclude criminal offenders from residing in the Township as was the effect of the Allegheny County ordinance. *Id.*

We conclude that this case is more akin to *Fross* than to our prior decision in *TWL Realty*. It is the purview of the sentencing courts and the Parole Board to determine which offenders are appropriate for community work-release programs. The Pennsylvania Commission on Sentencing was charged with adopting guidelines that the Parole Board must consider when paroling an

12

offender.[6]  Section 2154.5 of the Sentencing Code, 42 Pa. C.S. § 2154.5.  Section 9721(b) of the Sentencing Code charges the sentencing court with balancing the protection of the public with the rehabilitative needs of the offender.  Section 6137(a)(1) of the Parole Code requires the Parole Board, when determining whether to parole an offender, to balance the best interests of the inmate with the need to avoid injury to the Commonwealth's interests, should the offender be paroled.  Section 6137(g)(4)(iv) of the Parole Code specifically provides that the Parole Board may parole an offender only when "[t]here is no reasonable indication that the inmate poses a risk to public safety."  61 Pa. C.S. §6137(g)(4)(iv).  Additionally, Section 6102(1) of the Parole Code states that the

---

[6] Section 2154.5 of the Sentencing Code provides in relevant part:

(a) Adoption. -- The commission shall adopt guidelines that shall be considered by the [Parole Board] and any other paroling entity when exercising its power to parole and reparole all persons sentenced by any court in this Commonwealth to imprisonment in any correctional institution. The guidelines shall do all of the following:

(1) Give primary consideration to the protection of the public and to victim safety.

***

(3) Be designed to encourage inmates and parolees to conduct themselves in accordance with conditions and rules of conduct set forth by the department or other prison facilities and the [Parole Board].

(4) Be designed to encourage inmates and parolees to participate in programs….

(5) Provide for prioritization of incarceration, rehabilitation and other criminal justice resources for offenders posing the greatest risk to public safety.

(6)  Use validated risk assessment tools, be evidence based and take into account available research relating to the risk of recidivism, minimizing the threat posed to public safety and factors maximizing the success of reentry.

42 Pa. C.S. § 2154.5.

13

Parole Code provides several benefits to society including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.

Taken together, the Sentencing and Parole Codes demonstrate that when the Commonwealth places an offender in a particular work-release program, the Commonwealth has determined that the offender's placement is consistent with both the public's safety and the needs of the offender to reintegrate into society. The Ordinance's ban upon the housing of offenders with violent criminal histories is in conflict with the Commonwealth's determination that an offender is suitable for placement in the work-release facility; a determination that includes a conclusion that public safety would not be jeopardized by the offender. If the Ordinance is allowed to stand, other municipalities will be able to enact similar ordinances that contain more restrictive standards than the Sentencing and Parole Codes, thus jeopardizing the Commonwealth's parole scheme as embodied by the Sentencing and Parole Codes.

Accordingly, for the foregoing reasons, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

TWL Realty, LLC and Keystone
Correctional Services, Inc.

        v.

West Hanover Township Zoning
Hearing Board

        v.

Board of Supervisors of West
Hanover Township

Appeal of: West Hanover Township

    :
    :
    :
    :
    :
    :
    :
    :
    :
    :   No. 17 C.D. 2015
    :
    :
    :
    :
    :
    :

## **O R D E R**

AND NOW, this 5th day of January, 2016, the order of the Court of Common Pleas of Dauphin County is hereby AFFIRMED.

 

                        _____

                        **BONNIE BRIGANCE LEADBETTER,**
                        Judge