IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | |
| Department of Corrections, | : | |
| Department of General Services | : | |
| and Department of Human Services, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 588 C.D. 2021 |
| | : | Argued: September 12, 2022 |
| South Heidelberg Township Zoning | : | |
| Hearing Board | : | |
| | : | |
| v. | : | |
| | : | |
| South Heidelberg Township | : | |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                          FILED: December 9, 2022

The Department of Corrections (DOC), Department of General Services, and Department of Human Services (collectively, Commonwealth) appeal from the order of the Court of Common Pleas of Berks County (trial court) affirming the decision of the South Heidelberg Township Zoning Hearing Board (Board) in favor of South Heidelberg Township (collectively, Township). The Commonwealth argues that Pennsylvania's Prison and Parole Code (Parole Code) and Sentencing Code[1] preempt the Southwestern Berks County Zoning Ordinance of 2004 (Ordinance)[2] to the extent the Ordinance precluded the Commonwealth from

---

[1] 61 Pa.C.S. §§ 101-7301; 42 Pa.C.S. §§ 9701-9799.75.
[2] Sw. Berks Cnty., Pa., Zoning Ordinance (2004).

operating a correctional center on state-owned land. We agree and reverse the trial court.

## I. BACKGROUND

The Commonwealth owns the land at issue, which lies within the Ordinance's "Campus Employment" zoning district. *See generally* Ordinance, § 420.[3] From 1998 to 2008, a private business operated a halfway house and drug and alcohol treatment center on the land. In 2008, DOC took over and has operated the Wernersville Community Corrections Center (Halfway House), which is also a drug and alcohol treatment center.[4] In 2018, Halfway House housed almost 900 parolees, and as of July 2019, housed 181 parolees. Bd. Op., 2/11/20, at 10; Notes of Testimony (N.T.) Hr'g, 7/15/19, at 338.[5]

The Township's CE Campus Employment District is defined by Section 420 of the Ordinance. Ordinance, § 420. In relevant part, Section 420.2 of the Ordinance identifies over a dozen permitted uses in the district. *Id.* § 420.2(a)-(m). The Ordinance does not permit a community correctional center or similar facilities as a permitted use anywhere in the Township, including the Campus Employment District. *See generally* Ordinance; *accord* Bd.'s Op. at 24; Twp.'s Br. at 24 (stating that Halfway House "is not a use within the scope of permitted uses in

---

[3] We quote from the Ordinance below.

[4] Section 5001 of the Parole Code defines "community corrections center" as a "residential program that is supervised and operated by [DOC]." 61 Pa.C.S. § 5001. We add that the Commonwealth has also owned and operated a state hospital for mental health treatment on the premises since the 19th century.

[5] Halfway House has a two-year recidivism rate of 2.6% for new offenses and 7.8% for technical violations. N.T. Hr'g, 6/10/19, at 177 ("We have a two-year recidivism rate of 2.6 percent . . . ."). We note this because the Board's opinion states "2.8%" as the figure, which is an apparent typographical error. Bd.'s Op. at 10.

2

the Campus Employment (CE) Zoning District").[6]

In 2018, the Township's Code Enforcement Officer cited the Commonwealth for violating the Ordinance, specifically that the use of Halfway House was not a permitted use as of right in the zoning district. Notice of Violation, 11/12/18, at 2. A few months later, the Commonwealth filed a form application with the Board, which requested the applicant to identify the "type of application." Appl., 2/1/19, at 1. The Commonwealth indicated the following: (1) "[s]ubstantive challenge to the validity of the Zoning Ordinance;" (2) "[a]ppeal from a determination of the Zoning Officer;" (3) application for a variance; and (4) application for a special exception. *Id.* at 1-2. The Commonwealth contended, *inter alia*, that the Ordinance was preempted by state law. *Id.* at 6.

After several evidentiary hearings, the Board denied relief. In relevant part, the Board concluded that the Ordinance was not preempted by state law. Bd.'s Op. at 25. In the Board's view, the Ordinance had no bearing on whether an offender is paroled under the Sentencing and Parole Codes. *Id.* The Commonwealth timely appealed to the trial court, which affirmed the Board. The Commonwealth timely appealed to this Court and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

## II. ISSUES

The Commonwealth raises four issues. First, the Commonwealth argues that the General Assembly has preempted the Ordinance with respect to Halfway House. Second, the Commonwealth claims that the Ordinance improperly excludes all uses similar to Halfway House's use. Third, the Commonwealth argues

---

[6] The Ordinance defines "group home" or "group lodge" as a permitted use, but explicitly excludes from that definition "work release facilities for convicts or ex[-]convicts, or other housing facilities serving as an alternative to incarceration," *i.e.*, Halfway House, as a permitted use. Ordinance § 201(4).

3

in the alternative that the Ordinance nonetheless permits Halfway House's use. Last, the Commonwealth suggests that it should receive a variance by estoppel.

### III. ARGUMENTS AND ANALYSIS[7]

In support of its first issue, the Commonwealth contends that to the extent that the Parole and Sentencing Codes conflict with the Ordinance, the Codes prevail. Commonwealth's Br. at 17-18 (discussing *TWL Realty, LLC v. W. Hanover Twp. Zoning Hearing Bd.*, 132 A.3d 533 (Pa. Cmwlth. 2016) (*TWL*)). In the Commonwealth's view, *TWL* stands for the proposition that a township may not enact an ordinance that bans the housing of violent offenders in a local work-release or treatment facility when the Commonwealth has concluded those offenders reasonably pose no risk to public safety. *Id.* at 18-19. The Commonwealth suggests that *TWL* controls because, as in *TWL*, the Ordinance interferes with the Commonwealth's determination that an offender is suitable for placement in Halfway House. *Id.* at 19.[8]

In *TWL*, this Court identified three forms of preemption: express, field, and conflict. *TWL*, 132 A.3d at 537; *accord Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 247 (Pa. 2019). The *TWL* Court explained that under "conflict

---

[7] Because the trial court did not take additional evidence, our standard of review is limited to determining whether the Board abused its discretion or erred as a matter of law. *In re Charlestown Outdoor, LLC*, 280 A.3d 948, 957 (Pa. 2022). As a general matter, our Supreme Court noted that "the conflict that arises when a Commonwealth agency seeks to utilize real property in a manner that conflicts with a municipal corporation's zoning regulations is . . . a contest between two instrumentalities of the state." *Dep't of Gen. Servs. v. Ogontz Area Neighbors Ass'n*, 483 A.2d 448, 452 (Pa. 1984) (citation omitted).

[8] The Township distinguishes *TWL* on the basis that the facility in *TWL* was privately operated, unlike the instant DOC-operated facility. Twp.'s Br. at 19. Further, in the Township's view, *TWL* involved a "smaller community work-release program, and the parole board was taking into consideration both the public's safety and the needs of the offender to reintegrate into society." *Id.* at 19-20. The Township argues that no consideration was given to the public's safety given Halfway House's size and that the "need of the offenders could be served in other communities at a [lesser] impact." *Id.* at 20.

preemption, any local ordinance that contradicts, contravenes, or is inconsistent with a state statute is invalid. For conflict preemption to be applicable, the conflict between the statute and the ordinance must be irreconcilable." *TWL*, 132 A.3d at 537 (cleaned up).

For example, in *Fross v. County of Allegheny*, 20 A.3d 1193 (Pa. 2011), our Supreme Court examined conflict preemption in resolving whether a county ordinance was preempted by the Parole and Sentencing Codes. The county ordinance at issue imposed certain residency restrictions on sex offenders. *Fross*, 20 A.3d at 1197. In resolving the issue, the *Fross* Court discussed the goals of the relevant sections of the Parole and Sentencing Codes. *Id.* at 1196-97, 1203 (stating the purposes of those Codes is the "rehabilitation, reintegration, and diversion from prison of appropriate offenders" (citations omitted)). To achieve those goals, a sentencing court may order a probationer to "reside in a facility established for the instruction, recreation, or residence of persons on probation." *Id.* at 1197. Similarly, the Parole Board must approve the parolees' residences at release. *Id.*

Allegheny County defended its ordinance as sound because it protected the "health, safety, and welfare of their residents." *Id.* at 1200. The plaintiffs countered that Allegheny County usurped the Parole Board's power to approve sex offenders' residences because the ordinance "essentially exclude[d]" all such offenders from the county. *Id.* at 1201. In the plaintiffs' view, the ordinance improperly limited "the discretion of courts and of the Board in sentencing and paroling," as well as interfered with the goals of the Parole and Sentencing Codes to rehabilitate and reintegrate sex offenders into the community. *Id.*

Our Supreme Court explained that ordinances may be preempted if they act "as an obstacle to the execution of the full purposes and objectives of the General

5

Assembly, as expressed in a state law." *Id.* at 1203 (cleaned up). The Court explicitly held that because the ordinance effectively excluded sex offenders from most of Allegheny County, the ordinance conflicted with the Parole and Sentencing Codes. *Id.* at 1204. Further, the ordinance undermined the Legislature's policy determination that "diverting offenders from prison" advances "the Commonwealth's interest in the timely and effective administration of probation and parole." *Id.* at 1205. Additionally, the *Fross* Court noted that it could not "be seriously disputed that the ordinance [would] interfere with the efficient and timely administration of the parole system and significantly affect the quality of the Commonwealth's probation and parole systems." *Id.* (cleaned up). For these reasons, the Court concluded that the county ordinance was preempted. *Id.* at 1207.

Our Court's decision in *TWL* is also instructive. In that case, this Court addressed whether a zoning ordinance restricted a privately-operated community work-release facility, which was under contract with the DOC. *TWL*, 132 A.3d at 534. The zoning ordinance permitted such a facility if it was limited to nonviolent offenders. *Id.* The facility, however, began housing offenders who had committed crimes of violence, which led to the township citing the facility for violating the ordinance. *Id.* at 535. The court of common pleas ruled in favor of the facility because the Parole and Sentencing Codes preempted the township's zoning ordinance. *Id.* That township appealed to this Court, which affirmed. *Id.*

The *TWL* Court held that the Parole and Sentencing Codes "demonstrate that when the Commonwealth places an offender in a particular work-release program, the Commonwealth has determined that the offender's placement is consistent with both the public's safety and the needs of the offender to reintegrate into society." *TWL*, 132 A.3d at 540. Therefore, the *TWL* Court reasoned, an

6

ordinance that bans "housing of offenders with violent criminal histories" conflicts with the Commonwealth's determination that such offenders may be safely housed in a work-release facility. *Id.* The *TWL* Court also noted that if "the [o]rdinance is allowed to stand, other municipalities will be able to enact similar ordinances that contain more restrictive standards than the Sentencing and Parole Codes, thus jeopardizing the Commonwealth's parole scheme as embodied by the Sentencing and Parole Codes." *Id.*

Turning to the instant case, we initially disagree with the Township to the extent it distinguished *TWL* on the basis that the *TWL* facility was privately owned and the Parole Board in *TWL* considered the public's safety. *See* Twp.'s Br. at 19-20. The Township's argument is not persuasive because the *TWL* Court did not consider ownership a factor in resolving conflict preemption. *See TWL*, 132 A.3d at 540; *accord Fross*, 20 A.3d at 1204-05. Further, identical to the Parole Board in *TWL*, the Parole Board's decision to designate an offender as a parolee is itself evidence that the offender poses little "risk to public safety." *See TWL*, 132 A.3d at 540 (quoting 61 Pa.C.S. § 6137(g)(4)(iv)). Because the Township has not persuasively distinguished *TWL*, we turn to the Ordinance.

Like the ordinances at issue in *Fross* and *TWL*, the Ordinance precludes Halfway House's use. *See TWL*, 132 A.3d at 534. Indeed, the *TWL* ordinance merely precluded housing of violent offenders, whereas here the Ordinance does not permit *any* use of a community correctional center in the Township. *See id.* The Parole Board, much like the Parole Boards in *TWL* and *Fross*, cannot assign qualified offenders to Halfway House because of the Ordinance. *See id.*; *accord Fross*, 20 A.3d at 1197. The instant Ordinance, like the ordinances at issue in *TWL* and *Fross*, conflicts with and undermines the Parole Board's ability to assign

7

qualified offenders to an appropriate work-release facility. *See Fross*, 20 A.3d at 1204-05; *TWL*, 132 A.3d at 539-40. To paraphrase the *Fross* Court, the instant Ordinance bars Halfway House's use and unduly interferes with the efficient and timely administration of Pennsylvania's probation and parole systems. *Cf. Fross*, 20 A.3d at 1205. The Ordinance, which bans Halfway House's use, conflicts with "the Commonwealth's determination that an offender is suitable for placement in" Halfway House. *Cf. TWL*, 132 A.3d at 540. Accordingly, the Commonwealth is due relief.

## IV. CONCLUSION

For these reasons, because the Board and trial court misconstrued the applicable law regarding conflict preemption, we reverse the trial court's order, and we need not address the Commonwealth's remaining issues. *See In re Charlestown Outdoor*, 280 A.3d at 957; *Metalico Pittsburgh Inc. v. Newman*, 160 A.3d 205, 214 n.15 (Pa. Super. 2017).[9]

---

LORI A. DUMAS, Judge

Judge Wallace did not participate in the decision in this case.

---

[9] It is well settled that we may cite Superior Court cases for their persuasive value. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 653 n.20 (Pa. Cmwlth. 2021).

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Corrections, :
Department of General Services :
and Department of Human Services, :
                    Appellants :
                                 :
            v. :                 No. 588 C.D. 2021
                                 :
South Heidelberg Township Zoning :
Hearing Board :
                                 :
            v. :
                                 :
South Heidelberg Township :

# **O R D E R**

AND NOW, this 9th day of December, 2022, the April 29, 2021 order of the Court of Common Pleas of Berks County is REVERSED.

_____
LORI A. DUMAS, Judge