**EAST HEMPFIELD TOWNSHIP**

v.

**Donald BRUBAKER, Brubaker and Brubaker, a Partnership, Brubaker, Inc. and Nextel Partnership, Inc.**

**Appeal of: Donald Brubaker, Brubaker and Brubaker, a Partnership, Brubaker, Inc.**

Commonwealth Court of Pennsylvania.

Argued March 31, 2003.
Decided July 16, 2003.

Michael S. Grab, Columbia, for appellant.

Linus E. Fenicle, Camp Hill, for appellee.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Appellants (hereafter Brubaker) appeal from a final decree of the Court of Common Pleas of Lancaster County denying Brubaker's motion for post-trial relief and entering as final a decree nisi allowing Brubaker use of its communications tower until such time that East Hempfield Township (Township) either relocates the tower or removes it and provides Brubaker with equivalent communications technology. On appeal Brubaker contends that the trial court erred in granting the Township unilateral authority to declare that the tower poses a risk to the safety and welfare of the community without granting Brubaker an opportunity to contest the declaration or to recover construction costs and in permitting the Township to collect co-location revenues; by exceeding its powers in equity; by failing to follow *Petrosky v. Zoning Hearing Board of Township of Upper Chichester*, 485 Pa. 501, 402 A.2d 1385 (1979); and in issuing a final decree

inconsistent with the previous adjudication, findings of fact and opinion.

Brubaker has engaged in an HVAC service and contracting business since 1945 and owns seven contiguous parcels of property in the Township. The land is located in a C-2 community-commercial zoning district, a classification for which Section 207.9 of the Township's zoning ordinance places a height restriction on structures of thirty-five feet. Section 304.1 allows exceptions to the height restriction for certain structures, including communications towers, provided that the structure is set back from all property lines a distance at least equal to the height of the structure. This set-back requirement constitutes a structure's "fall zone," i.e., the distance thought to ensure the safety of adjoining property should a structure fall over. In addition, Section 112 provides that in a community-commercial zone a communications tower may be erected only if it will be an accessory use, i.e., a use incidental to and in conjunction with the landowner's primary business. Section 207.8 requires that if the property on which the structure is to be erected borders residential property, the minimum set-back is fifty feet from the property lines.

During the year 2000 Donald Brubaker had several conversations with Township officials regarding a communications tower that Brubaker wished to erect to replace an existing 100-foot tower on its property and thereby improve radio communications between Brubaker's offices and its traveling employees. On or about May 9, 2001, Brubaker met with zoning officer Ronald Kistler and David Blackman, director of planning, and proposed several site locations for a tower of between 200 and 300 feet. Kistler and Blackman discussed the proposals with the Township's solicitor and mistakenly concluded that the tower would

be an accessory use subject only to the 50-foot setback under Section 207.8 as opposed to the larger fall zone required under Section 304.1. On May 23, 2001, Brubaker submitted applications for a building permit and zoning review for a 250-foot tower, which the Township approved the next day. After construction commenced a Township inspector visited the site to conduct a foundation inspection; no objections were raised and construction of the tower was completed on July 16, 2001 at a cost of approximately $181,000.[1]

Brubaker thereafter contacted the Township several times to conduct a final inspection and to receive the necessary use and occupancy certificate, but on September 19, 2001 the Township informed Brubaker that the building permit would be "discontinued." On October 3, 2001, the Township filed a complaint in equity with the trial court, asserting that because Brubaker intended to allow communications companies to place transmission equipment on the tower, it was not an accessory use to Brubaker's business and that the tower's location violated the zoning ordinance's requirement of a 250-foot fall zone. The Township requested that the court require Brubaker either to remove the tower or to move it to a location which satisfied the Township's set-back requirements.

The trial court heard testimony from Kistler, Blackman and Brubaker and accepted the deposition testimony of Gregory Lebo, a structural engineer familiar with the type of tower constructed on the Brubaker property. In an adjudication and decree nisi filed May 23, 2002, the court concluded that under the five-part test set forth in *Petrosky*, Brubaker had acquired a vested right to the building permit and that ordinarily the tower would remain on the property. However, in deference to the Township's concerns over public safety, the court ruled that Brubaker had acquired a vested but *defeasible* right to the tower, which could be extinguished or modified if within sixty days the Township declared the tower to be such a danger that it must be removed or relocated and if the Township agreed to assume the costs for the removal or relocation. Further, if the tower was removed the Township had to provide Brubaker with alternative communications technology at the Township's expense, and if Brubaker earned any co-location revenue from the tower, the revenue should be paid to the Township until such time as it had recouped relocation costs.[2]

---

1. The center-line of the tower is 184 feet from the southern property line, across which sits residential housing; 78 feet from the western property line, which currently is farmland; and 328 feet from the eastern property line, bordered by additional land owned by Brubaker. The record does not indicate the tower's distance from the northern property line, apparently because that distance is so great that it is not an issue. Because it is bordered by residential property, the main concern in regard to the tower's height is in relation to the southern property line. The trial court found that there is no location on the current parcel of land on which the tower could be located and still satisfy the 250-foot fall-zone requirement.

2. "Co-location revenue" is revenue earned by leasing space on the tower and grounds to communications companies for the placement of antennas, etc. Notes of Administrative Hearing at 79–81; Plaintiff's Exhibit No. 6 (February 12, 2002). As the trial court found, after the building and zoning permits were approved Nextel Partners contacted Brubaker and concluded an agreement to lease space on the tower. Nextel applied to the Township for approval of the placement, and by decision filed September 17, 2001 the Township zoning board approved the arrangement. After the Township filed its complaint Nextel withdrew from the agreement.

In denying Brubaker's motion for post-trial relief, the trial court explained that its decision meant that Brubaker had a defeasible right only as to the *physical* tower and not as to the intended *use* of the tower, i.e., communications. The court reasoned that its decision protected Brubaker's vested right to a communications system while allowing for the Township's public safety concerns over the physical tower. The decree nisi was made final on September 6, 2002.[3]

In *Petrosky* the Supreme Court cited five factors to be weighed in determining whether a landowner has a vested right to a land use acquired by virtue of an erroneously or unlawfully issued building permit: the landowner's due diligence in attempting to comply with the law; the landowner's good faith throughout the proceedings; the landowner's expenditure of substantial, unrecoverable sums; the expiration of the period during which an appeal could have been taken from the issuance of the permit; and a lack of evidence demonstrating that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit. Landowners who satisfy these requirements have acquired a vested right to "continue to use their property in accordance with said permits." *Petrosky,* 485 Pa. at 511, 402 A.2d at 1390.

Initially, the Court notes that there can be no dispute that Brubaker satisfied the first four *Petrosky* factors. First, the trial court found that in meeting with Kistler and Blackman, Brubaker had exercised due diligence in attempting to comply with the law; the court rejected the Township's argument that Brubaker should have read the zoning ordinance himself and ascertained the correct zoning requirements. Second, the court found that Brubaker acted in good faith, and it rejected the Township's argument that Brubaker intended to use the tower primarily to generate leasing revenue from communications companies, a prohibited non-accessory use. Third, the court found that Brubaker's expenditure of $181,000 obviously represented a substantial, unrecoverable cost. Fourth, the court noted that no appeal had been taken by either party after issuance of the building permit. All of the court's findings are supported by substantial, competent evidence, and this Court will not disturb them on appeal.

■ It is evident, however, that the trial court erred in its reasoning regarding the public health, safety and welfare issue under the *Petrosky* test. The court found that the Township had failed to present sufficient evidence that the tower's existing location posed any public danger based on the unrebutted testimony of Gregory Lebo. He testified that the type of tower erected by Brubaker was a standard design widely used throughout the United States, that the tower complied with all applicable industry and regulatory standards and that the antennas that might be placed on the tower would be well within its structural load tolerance. Lebo further explained that, because of its construction and design, if the tower did have a catastrophic failure it would break apart about

---

**3.** In reviewing a final decree in equity, this Court is limited to determining whether the trial court's findings are supported by substantial evidence, whether the court committed an error of law or whether the trial judge committed an abuse of discretion. *Northview Motors, Inc. v. Commonwealth, Attorney General,* 128 Pa.Cmwlth. 54, 562 A.2d 977 (1989).

When the trial court conducts a de novo hearing at which it takes additional evidence, issues of credibility and evidentiary weight are in the exclusive province of the trial judge, and any factual findings, when supported by substantial evidence, are binding on an appellate court. *Id.*

two-thirds of the distance up the tower and essentially collapse in and upon itself, and while it was possible that the collapsing tower could fall and reach the western property line bordered by farmland, it would not fall the 184 feet necessary to reach the southern property line bordered by residential dwellings. *See* n.1 *supra.* To Lebo's knowledge no tower of the type erected on the Brubaker property had ever suffered a catastrophic failure.

The trial judge concluded in the adjudication and decree nisi as follows: "Given the unrebutted credible testimony, I cannot find that there is sufficient evidence to indicate a danger to the public's health or safety from the tower's existing location." *Id.* at p. 12. The decision later reiterates: "Given Mr. Lebo's testimony, the question becomes whether the possibility of public harm from the tower is sufficiently real to warrant requiring Brubaker to sustain the considerable financial burden of loss or relocation of the tower. I think not, since the *Petrosky* criteria have been met." *Id.* at p. 13. In the opinion accompanying the final decree, the court explained that although Brubaker had satisfied the *Petrosky* criteria, its vested right to the *physical* tower was defeasible so long as the Township provided an alternative communications *use.*

■ The trial court diligently attempted to balance the parties' competing claims, but its reasoning regarding the nature of Brubaker's vested rights constitutes an error of law. While the Court recognizes that a court of equity enjoys broad discretion in fashioning remedies which balance the interests of affected parties, it is equally fundamental that "[a] court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case [and] must be guided by the established rules and precedents." *Board of School Directors v. Kassab,* 69 Pa.Cmwlth. 65, 450 A.2d 282, 286 (1982) (quoting 27 Am.Jur.2d *Equity* § 118 (1966)). It has long been the rule in this Commonwealth that, just as for a court of law, a court of equity's failure to follow judicial precedent may constitute an abuse of discretion or an error of law. *Peoples–Pittsburgh Trust Co. v. Blickle,* 330 Pa. 398, 199 A. 213 (1938).

■ The principle is well settled that when a landowner acquires a land use through the expenditure of substantial, unrecoverable funds and in good-faith reliance on an erroneously or unlawfully issued building permit, that land use becomes a vested property right.[4] *Petrosky.* That vested right cannot be extinguished or substantially impaired. *Id.* Recognizing that private land use may affect the public good, *Petrosky* allows a court to deny any vested right if it is shown by objective, competent evidence that the exercise of that right would adversely affect the public health, safety or welfare. The trial court examined that factor and found that the tower posed no danger, but it then issued a decree allowing the Township to extinguish Brubaker's vested right based on nothing more than the Township's unsubstantiated fear that the tower posed a danger.

---

4. Cases recognizing the principle include, among others, *Highland Park Community Club of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh,* 509 Pa. 605, 506 A.2d 887 (1986) (no vested right); *Chateau Woods, Inc. v. Lower Paxton Township,* 772 A.2d 122 (Pa.Cmwlth.2001) (no vested right); *Mirkovic v. Zoning Hearing Board of Smith-*

*field Township,* 149 Pa.Cmwlth. 587, 613 A.2d 662 (1992) (vested right); *Koziel v. Zoning Hearing Board of Borough of Waynesboro,* 122 Pa.Cmwlth. 14, 551 A.2d 383 (1988) (vested right); *Three Rivers Youth v. Zoning Board of Adjustment for City of Pittsburgh,* 63 Pa. Cmwlth. 184, 437 A.2d 1064 (1981) (vested right).

Nothing in this case presents a compelling reason to deviate from the principles set forth in *Petrosky*. The building permit created a right in Brubaker to construct and to use the communications tower, and it is that right which *Petrosky* protects. Accordingly, the trial court's final decree is reversed, and this case is remanded to the court with instructions for it to direct the Township to issue a certificate of use and occupancy to allow Brubaker to continue the use of its communications tower.

### ORDER

AND NOW, this 16th day of July, 2003, the final decree of the Court of Common Pleas of Lancaster County is reversed, and this case is remanded to the court in accordance with the foregoing opinion.

Jurisdiction is relinquished.