**Nace v. New Cumberland Zoning Hearing Board**

454

C.P. of Cumberland County, No. 12-6668

*Sarah E. Buhite*, for appellant.
*Richard W. Stewart*, for appellee.

PECK, *J.*, October 15, 2013—Before this court is an appeal by Molly K. Nace ("Nace") from the decision of the New Cumberland Zoning Hearing Board ("the Board") that revoked a zoning permit issued by the Borough of New Cumberland, Cumberland County, Pennsylvania ("the Borough") in connection with the conversion of an existing detached garage into an efficiency apartment ("the Conversion").[1] At issue is whether Nace acquired a vested right in the use of her property and should have her zoning permit reinstated. For the reasons hereinafter set forth this court concludes that Nace did not acquire a vested right and, therefore, the decision of the Board must be upheld.

## PROCEDURAL HISTORY

On May 1, 2011, Nace submitted a zoning permit application to the Borough for the Conversion.[2] On November 22, 2011, Nace was issued a zoning permit by the Borough.[3] Approximately six months later, on May 31, 2012, the Borough revoked the zoning permit stating that it had been issued in error because Nace had not satisfied the parking requirements of a Borough ordinance.[4] Nace appealed the revocation with the Board and an evidentiary

1. Table of Records No. 4, Transcript of Proceedings, 9 (filed Nov. 21, 2012) (hereinafter "T.P. at___.").
2. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p. 1, ¶5 (filed Oct. 29, 2012).
3. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p. 1, ¶6 (filed Oct. 29, 2012).
4. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., pp. 1-2, ¶¶7, 9 (filed Oct. 29, 2012).

hearing was held on August 23, 2012.[5] On September 27, 2012, the Board issued a written decision denying Nace's appeal to reinstate the permit.[6] On October 29, 2012, Nace filed an appeal with this court and the Board certified the record on November 21, 2012.[7] The parties filed briefs in support of their respective positions and this court heard argument from the parties on June 21, 2013.

## STATEMENT OF FACTS

Nace was issued a zoning permit by the Board on November 22, 2011.[8] Nace began the Conversion on May 1, 2012 and the permit was revoked on May 31, 2012.[9] Prior to the date that the permit was issued, Nace reported that she had spent $2,994.74 on building supplies at various home improvement stores.[10] According to Nace, she spent the following during the period in which the permit was in effect: (1) $1269.90 on building supplies at various home improvement stores; (2) $1,400.00 on four windows and two doors at a building supply sale; and, (3) $500.00 on a deposit to connect water and sewer lines.[11] Nace made no attempt to return or to resell the purchased items.[12] Nace did not break purchases down by

5. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd. (filed Oct. 29, 2012).

6. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd. (filed Oct. 29, 2012).

7. Notice of Appeal (filed Oct. 29, 2012), Table of Records (filed Nov. 21, 2012).

8. T.P. at 11, 23; Table of Records No. 5, Applicant Ex. 1.

9. T.P. at 12, 23.

10. Table of Records No. 9, Appellant Ex. 5 (The total as supported by fourteen receipts dating from Oct. 10, 2011 through Nov. 5, 2011).

11. Table of Records No. 9, Appellant Ex. 5 (The total as supported by five receipts dating from May 17, 2012 through May 26, 2012); Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p.2, ¶12-13; T.P. at 17-21, 35, 51.

12. T.P. at 54.

job or by property.[13] Nace further reported she lost money for a loss of rent in reliance on the permit. The garage had been rented on a month to month lease for $100.00 per month.[14] The tenant moved out in April of 2012 so that the Conversion could begin.[15] After the permit was revoked on May 31, 2012, Nace spent $1,000.00 to complete the water and sewer line to avoid losing the $500.00 deposit.[16]

Evidence presented at the permit revocation appeal hearing before the Board established that the Conversion would require that two parking spots be added to the property and that those parking spots be paved.[17] The additional parking would be placed adjacent to the garage.[18] Mike Wyckoff, a neighbor to the property of the conversion, testified and expressed concern for the safety of the high number of children that use the alley to access the nearby park and for the children who play in the alley.[19] Mr. Wyckoff expressed concern that the placement of the additional parking of the conversion would put children in danger because the garage would create a blind spot for the vehicles as they backed out of those added parking spots.[20] In addition, Mr. Wyckoff presented a petition signed by fifteen neighbors which stated their belief that the Conversion created unnecessary danger and safety issues for the neighborhood and its children, overcrowding of the land and drainage issues.[21]

---

13. T.P. at 52-53.
14. T.P. at 40.
15. T.P. at 40; Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p.3, ¶20.
16. T.P. at 20-21; Table of Records No. 9, Appellant Ex. 5; Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p.1, ¶7.
17. T.P. at 10, 28-29.
18. T.P. at 10; Table of Records No. 6, Applicant Ex.2.
19. T.P. at 77-78.
20. T.P. at 77-78.
21. T.P. at 71-72, 78, Table of Records No. 11, Opponent's Ex. 1.

Pauline Eagle, another neighbor to the property of the conversion, expressed concern that the paving for the additional parking combined with the slight incline to Fourth Street would increase drainage of water onto her property that already experiences problems from water overflow.[22] Ms. Eagle expressed concern that the additional parking in the alley may limit accessibility for emergency vehicles.[23] She also testified to children playing in the alley.[24] Brad O'Connor, another neighbor who lives across the street from the conversion, testified that any more parked cars in the area was going to cause big problems.[25]

The Board found that the garage (that is the subject of the conversion) is located on an alley that is narrow and congested with traffic and children playing.[26] The Board found that the parking for the occupants of the proposed apartment (of the Conversion) would not have sufficient site distance to safely back into the alley.[27] Accordingly, the Board concluded that public safety would be adversely affected by the Conversion.[28]

## DISCUSSION

This court's scope of review is limited to a determination of whether the Board committed an error of law or abused its discretion. *Roseberry Life Ins. Co. v. Zoning Hearing Bd. of City of McKeesport*, 664 A.2d 688, 693 (Pa. Cmwlth.

22. T.P. at 79.
23. T.P. at 80, 82.
24. T.P. at 82.
25. T.P. at 83-85.
26. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p. 3, ¶22 (filed Oct. 29, 2012).
27. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p. 3, ¶23 (filed Oct. 29, 2012).
28. Notice of Appeal, Ex. A, Decision of the Zoning Hr'g Bd., p. 3, ¶5 (filed Oct. 29, 2012).

1995). An abuse of discretion occurs when the Board's findings of fact are not supported by substantial evidence. *Id.* Because this court did not take additional evidence, the Board is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.*

In Pennsylvania, it is well settled that "when a landowner acquires a land use through the expenditure of substantial, unrecoverable funds and in good-faith reliance on an erroneously or unlawfully issued building permit, that land use becomes a vested property right." *E. Hempfield Twp. v. Brubaker*, 828 A.2d 1184, 1188 (Pa. Cmwlth. 2003). In order to establish whether an individual has obtained a vested right, it is necessary for Nace to establish the following five elements:

1. Due diligence in attempting to comply with the law

2. Good faith throughout the proceedings

3. The expenditure of substantial unrecoverable funds

4. The expiration without appeal of the period which an appeal could have been taken from the issuance of the permit; and

5. The insufficiency of the evidence to prove that the individual property rights or the public health, safety, or welfare would be adversely affected by the use of the permit.

*Petrosky v. Zoning Hearing Bd. of the Twp. of Upper Chichester*, 402 A.2d 1385 (Pa. 1979). In the present case, only elements three and five are contested by the parties, therefore, this court will address each in turn.

Whether there was an Expenditure of Substantial Unrecoverable Funds

Appellants in the case of *Koziel v. The Borough of Waynesboro*, expended $2,309.00 in reliance of an issued permit to complete a renovation of their property. 551 A.2d 383, 384 (Pa. Cmwlth. 1988). The *Koziel* court held that such an expenditure was considered a substantial amount when applying the vested right doctrine. *Id.* at 385. The *Koziel* court specifically found, however, that the costs were unrecoverable because materials had been installed and the construction of the project had been completed. *See Koziel*, 551 A.2d 383; *see also Petrosky*, 402 A.2d 1385. In the present case, construction on the conversion had just commenced when the permit was revoked.

The court now turns to an analysis of the specific costs in this case. Evidence presented to the Board established that during the time in which the permit was issued, Nace spent $1,269.90 on building supplies and $1,400.00 on four windows and two doors. Nace did not, however, break these purchases down by job or by property. From this evidence, the Board properly concluded that many of the items could have been purchased for other projects unrelated to the Conversion. The Board further found that most of the cost could have been recovered through the reselling or return of the merchandise, and that Nace made no attempt to do so. As such, the Board considered these expenses either unrelated to the Conversion or recoverable.

Nace also spent $500.00 as a down payment for a sewer and water line for the conversion. This expense may properly be considered unrecoverable because it was made in reliance on the permit and would have been lost if the line was not completed. Nace's expenditure of an additional $1,000.00 to complete the sewer and water line is not chargeable, however, as it was expended after

the revocation of the permit. Lastly, Nace claims two months of lost rent from the garage, totaling $200.00, as unrecoverable. Such a loss may be considered an unrecoverable expense because it was incurred in reliance on the issued permit. No evidence was presented to show that Nace attempted to rent the garage after the revocation of the permit.

This yields a total of $700.00 in unrecoverable expenses. The Board's analysis and determination that Nace's expenses were not substantial are supported by the evidence. The Board, therefore, did not abuse its discretion in finding that Nace did not expend substantial unrecoverable funds in reliance upon the issued permit.

Whether an Adverse Effect Upon Public Safety Exists

The burden is upon the Board to demonstrate that the individual property rights, or the public health, safety or welfare would be adversely affected by the use of the permit, because to place this burden upon the property owner, against their own interests, would be illogical. *Mirkovic v. Zoning Hearing Bd. of Smithfield Twp.*, 613 A.2d 662, 666-67 (Pa. Cmwlth. 1992). However, the property owner bears the burden to show that the proof offered against him is insufficient. *Roseberry Life Ins. Co.*, 664 A.2d at 693. The standard for substantial evidence is defined as relevant evidence such that a reasonable mind might accept it as adequate to support a conclusion. *Lecky v. Lower Southhampton Twp. Zoning Hearing Bd.*, 864 A.2d 593, 595 n.1 (Pa. Cmwlth. 2004).

Substantial evidence was presented to the Board that public safety would be adversely affected by the Conversion because of the lack of site distance created by the additional parking spaces in conjunction with the

placement of the existing structure and its distance to the alley. Our review of the record reveals that the Board's decision was supported by testimony of neighbors regarding the potential public safety problems arising from the creation of additional parking spaces. Those witnesses testified to the danger increased traffic in the alley pose to children who use the alley to access the nearby park and who often play in the alley. Testimony also was heard regarding the danger, increased traffic and parked cars in the alley would pose by hindering emergency vehicles' access to the alley. The record shows that Nace offered little evidence to contest this testimony. The Board was presented with sufficient evidence to find that the public health, safety or welfare would be adversely affected by the use of the permit.

Accordingly, the following order is entered:

## ORDER OF COURT

And now, this 15th day of October, 2013, upon consideration of appellant's brief in support of appeal, the brief of appellee New Cumberland Zoning Hearing Board, a thorough review of the record, and after oral argument by the parties, it is hereby ordered that the decision of the New Cumberland Zoning Hearing Board is affirmed.

## ORDER OF COURT

And now, this 15th day of October, 2013, upon consideration of appellant's brief in support of appeal, the brief of appellee New Cumberland Zoning Hearing Board, a thorough review of the record, and after oral argument by the parties, it is hereby ordered that the decision of the New Cumberland Zoning Hearing Board is affirmed.